Citation Nr: 1719251 
Decision Date: 05/04/17 Archive Date: 06/06/17

DOCKET NO. 10-38 708 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Fee Basis Office in Northport, New York 


THE ISSUE

Entitlement to reimbursement or payment of monetary expenses incurred at Southside Hospital and Long Island Jewish Hospital from April 24, 2010 to May 21, 2010, to include all attending specialist care and inpatient services. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. T. Sprague, Counsel





INTRODUCTION

The Veteran had active service in the United States Marine Corps from July 1976 to July 1979, and from March 1981 to July 1986. He had additional periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA) in the Army National Guard. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from administrative decisions of the Veterans Health Administration (VHA) Fee Basis Office (FBO) in Northport, New York. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The denials of reimbursement/payment of medical expenses, which were dispatched over the course of May to July 2010 so as to encompass all specialty providers attending to the Veteran at Southside and Long Island Jewish Hospitals in New York, were premised on the conclusion that the Veteran did not have any treatment at VA facilities in the 24 months prior to his hospitalization. The VHA determined that pursuant to 38 U.S.C.A. § 1725, the Veteran was not eligible for reimbursement for emergency services for any of the care provided between April and May 2010. However, the VHA noted that in October 2008, the Veteran refilled prescriptions at VA facilities. 

Electronic mail correspondence between VHA representatives indicates that the determination was based on what "[the policy officer] had been told over the years" and that "interpretations can change." Another representative stated that "the filling of a prescription does not constitute receiving medical services" under applicable federal statutes. This reasoning, adopted into the administrative decisions and subsequent statement of the case, is not supported by law. 

38 U.S.C.A. § 1705(B) will prohibit recoupment of medical expenses when the Veteran has not "received care under this chapter [38 U.S.C.A. § 1701, et seq.] within the 24-month period preceding the furnishing of such emergency treatment." 

While "care" is not expressly defined in 38 U.S.C.A. § 1701, the term "medical services" is described in detail. The statute in 38 U.S.C.A. § 1701(6) states that "medical services" are to include "preventive health services." "Preventive health services" expressly include "maintenance of drug use profiles, patient drug monitoring, and drug utilization education." See 38 U.S.C.A. § 1701(9)(C). There is no listed exception for the provision of prescription medication by a VA clinician, and the Board cannot conclude that such an act, which is within the realm of the "maintenance of drug use profiles" and "patient drug monitoring" (i.e. a physician must prescribe the medication to be refilled at certain intervals), is outside of what is contemplated by the statutory definition of "medical services." Even if the Board were to adopt the strictest textual approach to statutory interpretation imaginable, it would not be able to exclude the refilling of prescriptions from covered "medical services" and "care." The Veteran did, indeed, receive care at VA in the 24 months prior to his private hospitalization. 

A review of the private treatment records from Southside and Long Island Jewish Hospitals indicates critical care periods and a transfer occurring on May 5, 2010. There is no record of any attempts by either hospital to contact VA, and the Veteran has not been given notice of how to substantiate his claim by showing any evidence in his possession which might document that he tried to contact VA for purposes of a transfer. Lastly, while the Veteran was transferred to Long Island Jewish Hospital on May 5, 2010, there has been no discussion as to if the Veteran could have been transferred to VA as a "feasibly available" alternative given his medical state. Accordingly, further development is required in this case. 

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with express notice as to how to substantiate his claim regarding services in whole or in part, at Southside and Long Island Jewish Hospitals from April to May 2010.

*Specifically, the Veteran should provide any information in his possession which shows an attempt, either by him or by his care providers, to transfer him to a VA facility at any point during his private inpatient hospitalization.

*In addition, any evidence he might have which would show that transfer to a VA facility (as opposed to Long Island Jewish Hospital) would be unfeasible or a hazard to his health, should be expressly provided. Such information can include, for example, a letter from a private physician or any lay statements which could serve to corroborate that the Veteran made attempts/requests to be moved to VA at the point of reaching stability. 

2. The medical records from Long Island Jewish Hospital and Southside Hospital, to include transfer records and critical care records which are on file, should be dispatched to an expert in internal medicine. This examiner should offer an opinion describing as to what point in the course of his inpatient hospitalization for endocarditis and sepsis did the Veteran reach medical stability whereby a transfer to VA, if practicable, would have been able to be accomplished without a threat to the Veteran's health. A well-rationalized opinion should be associated with each conclusion reached. 

3. Given the record suggests that the Veteran required critical care services at the time of his transfer to Long Island Jewish Hospital, the nearest VA facility with a critical care unit should be expressly contacted and, to the extent possible, an opinion as to the availability on May 5, 2010 to receive the Veteran at that facility, to include any records in their possession which might serve to indicate that they were actually contacted about receiving the Veteran at that time, must be obtained. 

3. After the above-directed development has been completed, re-adjudicate the Veteran's claim. If the claim not be granted in full, issue an appropriate supplemental statement of the case and forward the claim to the Board for adjudication. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).